IN THE DISTRICT COURT OF THE UNITED STATES
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

| | | |
|---|---|---|
| TERRI SANDERS, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | CASE NO. 2:09-CV-687-WKW [WO] |
| v. | ) | |
| | ) | |
| CARL WILSON, *et al.*, | ) | |
| | ) | |
| Defendants. | ) | |

## MEMORANDUM OPINION AND ORDER

Plaintiff Terri Sanders brings this action against Defendants Carl Wilson, Joel Duke, and Jim Byard (collectively, "Defendants"), alleging Fourth Amendment violations under 42 U.S.C. § 1983 and state-law malicious prosecution. This cause is before the court on Defendants' Motion for Summary Judgment (Doc. # 16), which has been fully briefed and is ready for disposition. Upon careful consideration of counsel's briefs, the relevant law, and the record as a whole, the court finds that Defendants' motion is due to be granted.

### I. JURISDICTION AND VENUE

Subject matter jurisdiction is exercised pursuant to 28 U.S.C. §§ 1331, 1343, 1367, 2201, and 2202. The parties do not contest personal jurisdiction or venue, and the court finds adequate allegations in support of both.

### II. STANDARD OF REVIEW

"Summary judgment is appropriate 'if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show there is no

genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law.'" *Greenberg v. BellSouth Telecomms., Inc.*, 498 F.3d 1258, 1263 (11th Cir. 2007) (*per curiam*) (quoting Fed. R. Civ. P. 56(c)). The party moving for summary judgment "always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of [the record, including pleadings, discovery materials and affidavits], which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). The movant may meet this burden by presenting evidence indicating there is no dispute of material fact or by showing that the nonmoving party has failed to present evidence in support of some element of its case on which it bears the ultimate burden of proof. *Id.* at 322-24.

If the movant meets its evidentiary burden, the burden shifts to the nonmoving party to establish, with evidence beyond the pleadings, that a genuine issue material to each of its claims for relief exists. Fed. R. Civ. P. 56(e)(2); *Celotex Corp.*, 477 U.S. at 324; *Clark v. Coats & Clark, Inc.*, 929 F.2d 604, 608 (11th Cir. 1991). What is material is determined by the substantive law applicable to the case. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). "The mere existence of some factual dispute will not defeat summary judgment unless that factual dispute is material to an issue affecting the outcome of the case." *McCormick v. City of Fort Lauderdale*, 333 F.3d 1234, 1243 (11th Cir. 2003) (*per curiam*) (internal quotation marks and citation omitted).

2

A genuine issue of material fact exists when the nonmoving party produces evidence that would allow a reasonable fact-finder to return a verdict in its favor. *Greenberg*, 498 F.3d at 1263; *Waddell v. Valley Forge Dental Assocs.*, 276 F.3d 1275, 1279 (11th Cir. 2001). However, if the evidence on which the nonmoving party relies "is merely colorable, or is not significantly probative, summary judgment may be granted." *Anderson*, 477 U.S. at 249-50 (citations omitted). "A mere 'scintilla' of evidence supporting the [nonmovant's] position will not suffice; there must be enough of a showing that the [trier of fact] could reasonably find for that party," *Walker v. Darby*, 911 F.2d 1573, 1577 (11th Cir. 1990), and the nonmoving party "must do more than simply show that there is some metaphysical doubt as to the material facts," *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). Conclusory allegations based on subjective beliefs are likewise insufficient to create a genuine issue of material fact and do not suffice to oppose a motion for summary judgment. *Holifield v. Reno*, 115 F.3d 1555, 1564 n.6 (11th Cir. 1997) (*per curiam*). Hence, when a plaintiff fails to set forth specific facts supported by appropriate evidence sufficient to establish the existence of an element essential to his case and on which the plaintiff will bear the burden of proof at trial, summary judgment is due to be granted in favor of the moving party. *Celotex Corp.*, 477 U.S. at 323.

### III.  FACTUAL AND PROCEDURAL BACKGROUND

This case arises out of the arrest and prosecution of Ms. Sanders for operating a business without a license, in violation of the Prattville Municipal Code, § 11-16-5.[1]  (Doc. # 17, Ex. H.)  Ms. Sanders claims that Mr. Wilson – a code enforcement officer – arrested her and instituted judicial proceedings against her without probable cause to do so, and that Mr. Duke and Mayor Byard, as supervisors of Mr. Wilson, are vicariously liable for Mr. Wilson's actions.  (*See* Compl. (Doc. # 1).)  The facts, construed in the light most favorable to Ms. Sanders, are as follows.

Ms. Sanders, a member of the Central Alabama Avian Society, raises exotic birds at her home in Prattville, Alabama.  (Sanders Dep. 16-17, 48 (Doc. # 21, Ex. 1).)  At any given time from 2006 until March 2010, Ms. Sanders owned between twenty-two and thirty parrots of various breeds, which were kept in an outbuilding and two rooms in her house.  (Sanders Dep. 19-20.)  Three to four of the birds were kept as pets, while the rest were kept for breeding purposes.  (Sanders Dep. 23-24.)  In addition, Guy Martin, who lived with Ms. Sanders, kept more than thirty small birds on the property during this period.  (Sanders Dep. 80-81.)

---

[1] Prattville Municipal Code § 11-16-5 states as follows: "It shall be unlawful for any person to engage in or carry on any business . . . for which a license is required by this article without first having taken out such license as herein required."

Sometime in 2006, Ms. Sanders invited Rex Musgrove, the caretaker of the property adjacent to Ms. Sanders' home,[2] onto her property to view her birds and the birdhouses she had recently erected.  (Musgrove Test.[3] 53.)  Mr. Musgrove testified that he saw three large bird cages, approximately nine to twelve feet long and two to three feet wide, and that he was "taken aback" by seeing "so much in the yard that had not been there the week before." (Musgrove Test. 53.)  Mr. Musgrove further testified that Ms. Sanders told him that she was "in the bird business."  (Musgrove Test. 54.)

Shortly thereafter, Mr. Musgrove voiced his concern about the birds to the office of the Prattville Mayor, Jim Byard.  (Musgrove Test. 55, 57.)  Specifically, Mr. Musgrove "asked the City to check . . . out" whether the birds and bird cages were "permissible under [the City's] zoning rule[s] and regulation[s]."  (Musgrove Test. 55, 57.)  Mr. Musgrove testified that he did not file a complaint, just an inquiry.  (Musgrove Test. 55 ("Well, I didn't file a complaint with the City, but I did ask the City would they check it out . . . .").) However, Mayor Byard testified in his deposition that Mr. Musgrove "made a complaint" about the bird waste.  (Byard Dep. 7, 13 (Doc. # 21, Ex. 2).)  Mayor Byard further testified that at some later time, either Mr. Musgrove or his daughter made a complaint about noise. (Byard Dep. 14.)

---

[2]  The property was owned by Mr. Musgrove's sister.  (Musgrove Test. 51 (Doc. # 17, Ex. B).) Mr. Musgrove testified that while his sister was living in Atlanta, "[he] was the one who checked on [the house] every day."  (Musgrove Test. 51.)

[3]  This citation is to the testimony taken during Ms. Sanders' trial on appeal to the circuit court.

After speaking with Mr. Musgrove, Mayor Byard contacted Mr. Duke, the Prattville City Planner in the Planning and Development Department.[4]  (Byard Dep. 11-12; Duke Test. 94 (Doc. # 17, Ex. E).)  The complaint was then brought to the attention of Mr. Wilson, who was tasked with investigating the complaint.  (Duke Test. 94; Byard Dep. 12.)

Mr. Wilson testified that he inspected the property and saw "all sorts of very large tropical birds in different cages."  (Wilson Test. 64 (Doc. # 17, Ex. D).)  Concerned with "unsanitary conditions," Mr. Wilson sent a letter to Ms. Sanders informing her of the complaint regarding "excessive noise and odors," and notifying her that she "must take whatever steps necessary to alleviate the specified nuisance within ten days" or face criminal charges.  (May 11, 2006 Letter from Wilson to Sanders (Doc. # 17, Ex. J).)

Upon receiving the letter, Ms. Sanders promptly contacted Mr. Wilson and explained that she would build enclosures to alleviate the concerns.  (Sanders Dep. 47-49; Wilson Test. 65-66.)  Mr. Wilson told her that "that was permissible."  (Wilson Test. 66.)  Ms. Sanders then sought and received a permit for building extensions in which to house the birds. (Sanders Dep. 56.)

Around this time, Mr. Musgrove informed Mr. Wilson that Ms. Sanders had told him that she was selling birds.  (Wilson Test. 65.)  Mr. Wilson testified that he told Mr. Musgrove that absent corroborating evidence demonstrating that Ms. Sanders was operating a business

---

[4] The Planning and Development Department manages development and enforces codes and ordinances.  (Duke Test. 89 (Doc. # 17, Ex. E).)

without a license, no action could be taken. (Wilson Test. 65-66; Aug. 18, 2006 Warrant (Doc. # 21, Ex. 3).) During the conversation with Ms. Sanders regarding the nuisance complaint, Mr. Wilson informed Ms. Sanders that the City "had received information that she was possibly operating a business." (Wilson Test. 66.) According to Mr. Wilson, Ms. Sanders replied that she was not operating a business and that she simply raised the birds as a hobby. (Wilson Test. 66.) Nonetheless, Mr. Wilson warned Ms. Sanders that she could not operate a business without a license. (Wilson Test. 66-67.)

Mr. Wilson then contacted Petsville, a pet store located in Prattville, and requested that someone from the store inform Mr. Wilson if anyone approached the store about buying birds.[5] (Aug. 18, 2006 Warrant; Wilson Test. 67-68.) In early July 2006, Mr. Wilson received information that Ms. Sanders had sold one bird to Petsville. (Wilson Test. 67-68.) Mr. Wilson then went to Petsville and obtained a copy of the check documenting the sale from Ms. Sanders to Petsville for $650.00. (Wilson Test. 68; July 5, 2006 Check from Petsville to Sanders (Doc. # 17, Ex. G).) Mr. Wilson testified that upon receiving this information, he conducted an internet search and learned that Ms. Sanders was listed as a breeder of parrots in Prattville. (Wilson Test. 72-74.)

On August 18, 2006, Mr. Wilson signed an affidavit for a warrant against Ms. Sanders for violation of "City Ordinance 6-5" (operating a business without a license). (Wilson Test.

---

[5] It is not clear from the report whether Mr. Wilson contacted Petsville before or after talking to Ms. Sanders. It is clear, however, that he contacted Petsville after talking to Mr. Musgrove.

75; Aug. 18, 2006 Warrant.)  Mr. Wilson testified that he took out the warrant against Ms. Sanders "because M[s.] Sanders had repeatedly stated to [Mr. Wilson] that she was not operating a business[,] whereas the evidence coupled with the amount of birds that she had on her property[,] along with the sales and the advertising for sale of animals[,] indicated a violation of City Ordinance 6-5."  (Wilson Test. 75.)

Ms. Sanders' conviction in municipal court was overturned on appeal in the Circuit Court of Elmore County, and all charges against her were dismissed.  (Sanders Dep. 114-16; Doc. # 17, Ex. N; Compl. ¶¶ 34-35; Defs.' Summ. J. Br. 10 (Doc. # 17).)  Ms. Sanders now asserts claims under the Fourth Amendment for false arrest and malicious prosecution and under Alabama law for malicious prosecution.  She seeks redress for the time and money spent on her defense and the damage done to her reputation.  (Sanders Resp. Br. 16 (Doc. # 21).)

## IV.  DISCUSSION

The viability of Ms. Sanders' case hinges on probable cause.  Ms. Sanders contends that Mr. Wilson, acting under color of state law, arrested Ms. Sanders and instituted judicial proceedings against her without probable cause.  Defendants, on the other hand, contend that probable cause did exist for Mr. Wilson's actions, and that there is no genuine issue of material fact to the contrary.  For the following reasons, the court finds Defendants' arguments persuasive.

The Fourth Amendment – which applies to the states through the Fourteenth Amendment – protects "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures." U.S. Const. amend. IV.  False arrest[6] and malicious prosecution present viable Fourth Amendment claims properly brought under § 1983.  *See Kjellsen v. Mills*, 517 F.3d 1232, 1237 (11th Cir. 2008); *Madiwale v. Savaiko*, 117 F.3d 1321, 1324 (11th Cir. 1997).

A § 1983 claim for false arrest lies where one is detained pursuant to an arrest made "without probable cause to believe a crime has been committed." *Madiwale*, 117 F.3d at 1324; *Ortega v. Christian*, 85 F.3d 1521, 1526 (11th Cir. 1996).  Similarly, to bring suit under § 1983 for malicious prosecution, a plaintiff must show, among other things, that the criminal prosecution was made "with malice and without probable cause." *Wood v. Kesler*, 323 F.3d 872, 882 (11th Cir. 2003).  As noted by the Eleventh Circuit in *Wood*, a claim for malicious prosecution under Alabama law requires the same showing.  *Id.*  Thus, the existence of probable cause would be an absolute bar to Ms. Sanders' § 1983 claims (Counts I, II, and IV), as well as to her claim for state-law malicious prosecution (Count III).  *See Ortega*, 85 F.3d at 1526.

"'Probable cause exists where the facts and circumstances within the collective knowledge of the law enforcement officials, of which they had reasonably trustworthy

---

[6] In Count I of the Complaint, Ms. Sanders claims "False Arrest, False Imprisonment."  (Compl. 8.)  However, because there are no allegations that Ms. Sanders was imprisoned, the court interprets this claim as one for false arrest only.

information, are sufficient to cause a person of reasonable caution to believe that an offense has been or is being committed.'"   *United States v. Jimenez*, 780 F.2d 975, 978 (11th Cir. 1986) (quoting *United States v. Blasco*, 702 F.2d 1315, 1324 (11th Cir. 1983)).   Although probable cause requires more than "mere suspicion," *Mallory v. United States*, 354 U.S. 449, 454 (1957), it "does not require the same type of specific evidence of each element of the offense as would be needed to support a conviction," *Adams v. Williams*, 407 U.S. 143, 149 (1972).

Defendants maintain that Mr. Wilson – as a code enforcement officer acting under color of state law – had probable cause to believe that Ms. Sanders was operating a business without a license.   Pursuant to Rule 56(c) of the Federal Rules of Civil Procedure, Defendants, as the moving parties, have the initial burden of demonstrating an "absence of genuine issue of material fact" related to this essential element of Ms. Sanders' claims. *Celotex Corp.*, 477 U.S. at 323.   As discussed below, Defendants have presented sufficient evidence to meet their burden.

Mr. Wilson – after receiving a complaint/inquiry from Mr. Musgrove related to sanitation concerns – personally viewed Ms. Sanders' property and witnessed the number and type of birds located thereon.   In the context of making these complaints/inquiries, Mr. Musgrove told Mr. Wilson that Ms. Sanders had told him that she was in the "bird business." Mr. Wilson, upon receiving this information and in an attempt to corroborate Mr.

Musgrove's statements, contacted local pet stores for any information regarding sales of birds.  Shortly thereafter, one such pet store contacted Mr. Wilson with information that it had recently purchased a bird from Ms. Sanders.  After receiving this information from the pet store, Mr. Wilson conducted an internet search and discovered a website listing Ms. Sanders as a parrot "breeder."

This evidence is more than sufficient to show that Mr. Wilson had probable cause to believe that Ms. Sanders was operating a business from her home.  A reasonable code enforcement officer would believe, based on the above information, that such a violation had occurred or was occurring.  *See Jimenez*, 780 F.2d at 978.

The burden then shifts to Ms. Sanders to establish, with evidence beyond the pleadings, that a genuine issue of fact exists as to the probable cause element of her claims. Fed. R. Civ. P. 56(e)(2); *Celotex Corp.*, 477 U.S. at 324; *Clark*, 929 F.2d at 608.  Rather than present evidence showing an absence of probable cause, Ms. Sanders spends the majority of her brief arguing that the law is "clearly established," and repeatedly makes the legal conclusion that probable cause did not exist.  She fails, however, to refute the evidence of the number of birds, the complaints by Mr. Musgrove, the sale to the pet store, and the fact that Ms. Sanders was listed online as a parrot breeder.[7]

---

[7] Ms. Sanders disputes Mr. Musgrove's statement that Ms. Sanders admitted she was in the "bird business."  However, Ms. Sanders does not dispute that Mr. Musgrove conveyed that information to Mr. Wilson.

11

The evidence upon which Ms. Sanders relies relates solely to Defendants' motives – she maintains that Defendants arrested her and prosecuted a criminal suit against her not because they believed she had committed the offense charged, but because Mr. Musgrove, "for some reason," wanted the birds gone.  According to Ms. Sanders, Mr. Musgrove was a friend and political supporter of the mayor, thus motivating the mayor's office to appease Mr. Musgrove's wishes.[8]  (Sanders Resp. Br. 3.)  However, any evidence of Defendants' ulterior motives is irrelevant to the probable cause analysis.  *See Whren v. United States*, 517 U.S. 806, 813 (1996) ("Subjective intentions play no role in ordinary, probable-cause Fourth Amendment analysis.").   Simply put, Ms. Sanders has failed to carry her burden in demonstrating that a genuine issue of material fact exists that Mr. Wilson acted without probable cause.  Furthermore, because there is no genuine issue of material fact that Mr. Wilson violated Ms. Sanders' constitutional rights, Mr. Duke and Mayor Byard cannot be held liable on the theory of *respondeat superior*.  *See City of Los Angeles v. Heller*, 475 U.S. 796, 799 (1986) (noting that when supervisors are "sued only because they were thought legally responsible for [their subordinate's] actions," than "it is inconceivable" that the supervisors could be liable to the plaintiff when the subordinate "inflicted no constitutional injury on [the plaintiff]").

---

[8] To support this assertion, Ms. Sanders argues the following: that Mr. Musgrove was not a "proper person" to bring the complaint to the mayor's office, as he did not technically live at the residence adjacent to Ms. Sanders' home; that Mr. Wilson was not the proper person to enforce/regulate business licenses, as his duties related solely to investigating nuisance complaints; and, finally, that Mr. Musgrove, as someone Mayor Byard had known his "entire life," was a friend and political supporter of Mayor Byard.

## V.  CONCLUSION

For the foregoing reasons, Defendants' motion for summary judgment on all claims

(Doc. # 16) is GRANTED.  A separate judgment will be issued.

DONE this 14th day of July, 2010.

                                          /s/ W.  Keith Watkins
                                   UNITED STATES DISTRICT JUDGE